ROMÁN, PETITIONER AND APPELLEE, *v.* AGOSTO, RESPONDENT
AND APPELLANT.

APPEAL from the District Court of San Juan in a Mandamus

No. 1998.—Decided June 28, 1919.

NOTARIES — CERTIFIED COPY OF PART OF WILL — ACKNOWLEDGMENT OF NATURAL
   CHILD BY WILL — REGISTRY OF ACKNOWLEDGMENT — CIVIL REGISTRY — INTER-
   ESTED PARTY.—On receipt of his fees a notary public is obliged to issue a
   certified copy of the clause of a will containing the acknowledgment of a
   natural child, for the child is entitled to have it registered in the civil reg-
   istry even before the death of the testator, and for the purposes of sec-
   tion 25 of the Notarial Law as amended on March 12, 1914, not only the·
   child but either of its parents shall be considered an interested party entitled
   to such copy.

ID.—ID.—ID.—INTENTION OF TESTATOR.—The acknowledgment of a natural child in·
   a will being irrevocably effective from the moment the will is made, an ac-
   tion for acknowledgment is not necessary to obtain what has already been·

obtained by a solemnly expressed intention of the testator, and if it had been the intention of the testator that the acknowledgment should remain unrevealed in the notary's protocol, he would have made a closed will.

ID.—PROTOCOL—EVIDENCE.—It is not error for a court to order a notary to exhibit his protocol, especially in a case like this in which the order tended to determine whether or not the acknowledgment had been made.

The facts are stated in the opinion.

*Mr. Angel R. de Jesús* for the appellant.

*Mr. Leopoldo Feliu* for the appellee.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

On August 27, 1918, Brígida Román petitioned the District Court of San Juan, Section 1, for a writ of mandamus against notary Adrián Agosto commanding him to issue a copy of the will made by Manuel Font Jiménez on July 31, 1916, in which he acknowledged as his daughter the girl named Josefina Manuela begotten by the said Font Jiménez with the petitioner, the said notary having refused to issue such copy although the petitioner had offered to pay him the fees allowed therefor.

An alternative writ of mandamus was issued and the respondent notary having answered that the facts alleged were not sufficient to justify the writ and that his obligations as a notary prevented him from complying with it for the reason that it referred to a will made by a person who is still alive, the case was heard, both parties appearing, and judgment was entered on October 7, 1918, commanding notary Adrián Agosto Abadía to issue to the petitioner a certified copy of the clause containing the acknowledgment of Josefina Manuela as a natural child, this clause being a part of the will made by Manuel Font Jiménez before the said notary on July 31, 1916, under No. 34 of the protocol of that year.

That judgment was appealed from to this court by the respondent notary, who alleges in support of the appeal that the petitioner is not an interested party within the meaning

of section 25 of the Notarial Law because the acknowledgment made in a will has no effect until after the death of the testator and because said section 25, in connection with section 23, authorizes notaries to issue copies of entire documents executed before them, but not of parts of them, and that the court erred also in ordering the notary at the trial to exhibit the protocol of the year 1916 containing the will in question.

According to section 675 of the Civil Code, "the act by which a person disposes of all his property or of a part of it, to take effect after his death, is called a will." Hence, a will has the juridical character of disposing of the property of the testator after his death and produces no legal effect upon the property until the death has occurred. *Servera v. Otero,* 22 P. R. R. 341.

According to section 727 of the Civil Code, all testamentary provisions are essentially revocable, even though the testator should state in the will his wish or resolution not to revoke them; but, as an exception to this general rule, section 731 provides that the acknowledgment of an illegitimate child does not lose its legal force, even though the will in which it was made may be revoked. As a result of that exception the acknowledgment of a natural child in a will operates legally from the time it is made and it is unnecessary to await the death of the testator; and by virtue of such acknowledgment the natural child acquires its rights as such, but could not assert them except by evidence of the act of acknowledgment, which in this case consists of a copy of the acknowledgment clause of the will of Manuel Font Jiménez to be entered in the civil register in order that the same may show an authentic acknowledgment of the girl Josefina Manuela.

In commenting on section 741 of the Spanish Civil Code, corresponding to section 731 of the Revised Code, after es-

tablishing such reasons as may give rise to the revocation of wills, Manresa continues as follows:

"But the case is otherwise as regards a declaration acknowledging an illegitimate child, this being an act involving material facts which are not subject to modification nor depend upon the will of the testator. On the contrary, such an acknowledgment is a confession of the paternity which at once determines the mutuality of rights and obligations derived from the legal family status; and this fact being acknowledged in an authentic document, it is sufficient that it exist for a single moment in order that it may be irrevocably effective. 5 Manresa, 723–4.

The acknowledgment of a natural child in a will being irrevocably effective from the moment the will is made, an action for acknowledgment is not necessary to obtain what has already been obtained by the solemnly expressed will of the testator, whose intention could not have been that the acknowledgment should remain concealed in the notary's protocol, for in that case he would have made a closed will.

Section 25 of the Notarial Law of March 8, 1906, as amended by Act No. 15 of March 12, 1914, reads as follows:

"The parties, their ancestors and successors in the subject-matter of the contract and any person appearing as interested therein, may apply to and obtain from the notary copies of the original documents. Any other person may also obtain copies of a notarial document upon justified application to a district court, which in its reasonable discretion may issue an order to that effect."

Section 23 of the Act of March 8, 1906, reads as follows:

"By copy is understood a literal transcript of an instrument executed before a notary which the latter, or the person who is lawfully in charge of the protocol, issues to the persons requesting same."

If in the cases authorized by said section 25 a notary may issue a copy of an entire notarial document, for the same reason he may issue a copy of the part or clause of a will wherein a right is acknowledged independently of the rest

of the document. And not only is the acknowledged natural child an interested party who may obtain such a copy, but either of its parents is also, for the **effects of the** acknowledgment extend to the mother as well as to the father.

The court did not err in ordering the notary to exhibit his protocol of the year 1916, for compliance with that order tended to determine whether or not the acknowledgment had been made so that the court could decide whether or not the writ of mandamus should be issued.

The judgment must be

*Affirmed.*

Justices del Toro, Aldrey and Hutchison concurred.
Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

In frequent opinions this court has declared that a natural child obtains a status in two ways,—either by a voluntary act on the part of the father in a deed, will, or other public instrument or solemn act, or else by a judgment of the court compelling such recognition from the father of the child or from his heirs in case he is dead.

In this case the theory of the petitioner and of the court below, as well as of this court, was that the child in question had acquired the voluntary status of a natural child and that it was unnecessary for it to bring a suit to compel recognition. The necessary result of the opinion of this court is that there has been and is existing a solemn recognition of the alleged natural child.

Section 675 of the Civil Code provides:

"The act by which a person disposes of all his property or of a part of it, to take effect after his death, is called a will."

The act is only to take effect on the death of the person performing it. It would seem to follow conclusively that the act has no effect until death occurs.

But, says the majority opinion, by section 731 of the Civil

Code the acknowledgment does not lose its legal force even though the will in which it was made is revoked. From this provision, apparently, the court concludes that an acknowledgment made in a will is effective immediately. The intermediate premises are not stated and the court necessarily also holds that any adjective means, *qua* mandamus, are likewise available to make a notary produce a particular clause of a will intrusted to his care. Nowhere do I find any statement that an acknowledgment made in an instrument intended to be a will shall be immediately effective. The chapter in which this section 731 is found relates solely to revocations and insufficiency of wills. It does not follow that because a revocation does not affect an acknowledgment the character of the "act" mentioned in section 675 is changed. It is there immutably, until the legislature enacts differently, an act to be effective on the death of the testator. A revocation could not hurry the act if the act was only to be effective on death. The revocation of a will is not equivalent to the death of the testator.

Writings may be made to become deeds, but they only become such on delivery. Similarly, a paper or writing may be made to become the will of a particular man, but it only becomes such by reason of his death.

I am not attempting to state at this time that this writing could not be available to a natural child to compel an acknowledgment, but I do maintain that there is no will and hence no solemn act until the death of the testator. Before that time the instrument is dormant and takes no rank as a solemn document.

One might think that we were really treating of a revoked will. Such is not the fact. The alleged maker of the will, of the act described in section 675 to be effective on death, has not revoked his will. It is still presumptively a will intended to be effective on the death of Manuel Font Jiménez. Section 731 is applicable only to revoked wills.

The alleged testator is not dead. This is not the case of a will in the protocol of a notary acquiring the force of a public document by reason of death. At such moment only section 731 intervenes to protect a natural child. The will, although revoked, is to be effective in regard to an acknowledgment just as though it had never been revoked. The clause or clauses of acknowledgment or otherwise shall have the same effect as the provisions of the unrevoked will shall have, but no more. These provisions are only effective on death. A natural child may be acknowledged by public instrument, but a document is not a public instrument merely because a notary solemnizes it (*dar fé*). The document must be a human act like a deed or a will. If a notary certifies that a piece of poetry was recited to him, the recital is not an act in the law and hence is not a public document. A will is known as such on death; so again I insist that there can be no public instrument and no acknowledgment by a will until death occurs.

Let us suppose, however, that the will is effective before death for the purposes of an acknowledgment, nevertheless the will would have to be examined to see that it was executed according to the forms of law or otherwise be ineffective as a will. The solemnization by the notary and witnesses and other formalities would have to appear. In the instant case the notary is required to transcribe a clause which, transcribed alone, does not show the due formalities. In other words, the notary is required to transcribe a clause without a showing that the clause is such a solemn act as gives the child the status.

We think the petitioner must have had some idea of this, because she asked for a copy of the will itself, but the court below apparently thought that she would have no right to learn the contents of the rest of the will and hence limited its mandamus to a copy of the clause acknowledging the child.

This decision says, moreover, that the courts have the power to compel a notary to read a will, to search its contents and extract from them a supposed or claimed clause acknowledging a natural child. It is well known that the notary who drew the will is not always the custodian of the protocol, but, even if he is, there is no presumption that he knows the contents of a will. The notary, under the law—section 25 of the Notarial Act as amended—is solely required to perform the automatic act of making copies. There is no duty imposed upon him to winnow out of a will a clause which may be supposed to favor a particular person. This is not the most important aspect of the case, but it is perhaps the most obvious, as the law of mandamus exists only to compel a duty. The notary is under no duty to select, which involves a certain exercise of judgment and discretion.

Suppose the clause in the will is, as would most frequently happen: "I give to my son Juan a certain piece of property (naming it)." If the child named is a natural child, it would be particularly effective as an acknowledgment, but that the child is a natural one, or other matters of identification, would have to be made by the notary. The notary would have to pass on the sufficiency of the clause as well as on the identification of the child.

The will is a personal act. The act required of the notary is personal. The law of mandamus is of scant application under such conditions.

In this particular mandamus, moreover, there is the fact that it is not the child that is seeking a copy of a notarial deed. It is the mother of the child who claims it by virtue of her *patria potestas* over the child. If she had brought this suit in the name of the child the situation might be different, but it does not seem to me that she has the interest which the law requires.